# SUPREME COURT.

## HENRY H. SEGUINE and others agt. JACKSON S. SCHULTZ and others.

By the statute establishing and regulating *quarantine* at the lower bay of New York, the legislature never intended that *Staten Island* should be a place where any operation of quarantine, except to bury the dead, should be carried on.
Therefore, the *commissioners of quarantine*, or the *metropolitan board of health*, or both jointly, will be restrained by injunction from removing from the quarantine vessels any persons who are the subjects of quarantine treatment, to Sequine's Point on Staten Island.

*Brooklyn Special Term July*, 1866.

THIS was a motion for an injunction. The plaintiffs are land owners and residents in the vicinity of Seguine's Point, Staten Island. The defendants are the metropolitan board of health, the commissioners of quarantine and the commissioners of emigration. The plaintiffs allege that the defend-

ants are about to erect hospitals near Seguine's Point, upon land which they have obtained ; that such hospitals are to be used for keeping persons sick with cholera and other diseases, or who have been exposed to it and brought from ships at quarantine. The further allegations of the plaintiffs sufficiently appear in the quotations contained in the points for the board of health, which also show in part the nature of their affidavits in reply. The latter were very numerous, many of them being from physicians, to show that the proposed use of the ground would not be dangerous to the neighbors, but as the case was decided upon a question of statute law, it is not deemed necessary to refer further to their contents.

TOMPKINS WESTERVELT *and*
JAMES T. BRADY, *for plaintiffs.*

I. The affidavits on the part of the plaintiffs, make out a proper case for the injunction prayed for.

1. They show the acts sought to be enjoined would greatly injure and depreciate the plaintiffs property. The affidavits show that the real estate of plaintiffs, situate in the immediate vicinity of the premises on which the acts sought to be restrained are proposed to be done by the defendants, is in value about $160,000, to wit :

| | |
|---|---|
| Seguine | $80,000 |
| Latourette | 40,000 |
| Androuette | 18,000 |
| Wood | 15,000 |
| Johnson | 7,000 |

This fact appears in the affidavits of these parties, and is corroborated by the short affidavits of several others, who state they know the facts set forth in the longer affidavits, and that the same are true.

These affidavits all show that the proposed action of the defendants will injure and depreciate the value of plaintiffs premises at least one-third, or over $50,000, and a similar depreciation would of course result in the value of all the

neighboring property, damaging it to the extent of many hundreds of thousands of dollars.

One of the plaintiffs, Latourette, swears to an instance already occurred, where a sale of part of his premises for $500 an acre, agreed upon before the defendants' intentions were known, has been frustrated, and the purchasers refuse to take the property even at $400 an acre—a reduction of 20 per cent. This depreciation was caused by the mere publication of the defendants intention. What would it be when that intention had ripened into action?

2. The affidavits show danger to life and health. The dense population of the neighborhood, one thousand people within a mile of the proposed quarantine, eleven railroad trains passing daily within a short distance, the prevalent wind directly from the proposed quarantine to the most densely peopled part of the neighborhood.

The plaintiffs own residences are in the immediate vicinity, some of them within a few hundred yards.

Three physicians of standing and experience, resident in the neighborhood, and familiar with the population and locality, testify that the proposed location of a quarantine by the defendants would be very dangerous.

3. The danger and exposure is of course an element also in the depreciation of the value of property.

4. The affidavits also show that the proposed acts of defendants would interfere with the lawful exercise, by plaintiffs and others, of their lawful business in the catching and caring for oysters, of which they have great numbers planted in neighboring waters.

II. The damage and danger to the plaintiffs and others proved by the affidavits, as aforesaid, is sufficient ground for the injunction, unless there is superior right in the defendants to use the premises which they occupy for the purpose complained of. No such right exists.

1. Quarantine and quarantine operations are creatures of positive law. Such establishments and operations cannot lawfully exist, be maintained or carried on anywhere, except

by virtue of the enabling or sustaining force of some positive enactment permitting or establishing them.

There is no such statutory provision or permission for the carrying on of any quarantine operations at the place where such operations are now sought to be enjoined. The location of all quarantine operations for the present and for the future is fixed by the acts. (*Chap*. 358 *of Session Laws of* 1863, *and chap*. 751 *of · Laws of* 1866 ; *see Laws of* 1863, *ch*. 358, § 2, *p*. 573 ; § 3, *p* 573 ; §§ 6, 7, 8, *p*. 574 ; *Laws of* 1866, *ch*. 751, § 2.)

So far from permitting quarantine operations at the place where they are now sought to be enjoined, they are expressly forbidden at that place or any other on Staten Island, and are located at present afloat at least two miles from Staten Island, and for the future and permanently, on the west bank shoal at least 1½ miles from Staten Island.

Moreover, the act of 1863 orders the immediate sale of these very premises, and thus in the strongest manner contradicts any intention of the legislature to have any quarantine or quarantine establishment erected there (*Laws of* 1866, *ch*. 358, § 42, *pp*. 584, 585).

On general principles on the facts made on the moving affidavits, the injunction should be maintained against the defendants. (*See the principles laid down and cases cited in Phœnix agt. Commissioners of Emigration*, 1 *Abb. Pr.* 466 ; *same case on appeal*, 12 *How. Pr. R.* 1 ; *Brown agt. The Mayor, &c.*, 3 *Barb.* 254.)

III. The plaintiffs are properly united in this action. (*See Peck agt. Elder*, 3 *Sand. S. C. R.* 126 ; *Brady agt. Weeks*, 3 *Barb.* 157 ; *Brown agt. Mayor, Id.* 254.)

IV. The metropolitan board of health cannot, on the premises in question, or elsewhere, claim or exercise the right of receiving or detaining persons or property, the subject of quarantine. Quarantine operations are by the statute above referred to, to be conducted and controlled solely by the commissioners of quarantine, and by the statute creating the board of health. Such jurisdiction is expressly reserved by

the health officer and quarantine commissioners (*Laws of* 1866, *ch.* 74, § 15.)

V. The reception and detention of persons arriving from sea on infected vessels, and who have been exposed to quarantinable disease, and are detained by reason of such exposure and the consequent danger of the development in them of quarantinable disease, is as much a part of quarantine and quarantine operations, as the care or treatment of persons actually sick with such disease, and is equally to be confined within the locality which the quarantine laws prescribe for the carrying on of quarantine operations, to wit : "*at least two miles from the shore of Staten Island.*"

VI. If it be claimed that the passengers from infected vessels are to be discharged from quarantine jurisdiction, and on being landed on Staten Island, within the metropolitan police district, come within the jurisdiction of the board of health, and may be disposed of by them where they see fit, under the plenary powers conferred upon them by the act creating them, we say that such a claim is a mere evasion of the quarantine law, and cannot be sustained. It would be merely an attempt to transfer quarantine jurisdiction, which (*see supra, point IV*) the law says shall not be transferred.

The powers granted to the board of health are to be exercised in case of epidemic disease *arising and existing within the metropolitan police district*, and are not intended to cover, and do not cover or affect persons arriving from sea, who are solely subject to quarantine jurisdiction.

GEORGE BLISS, JR., *and*
CHARLES TRACY, *for Board of Health.*

The officers and boards that are concerned in protecting the state from the introduction of disease by means of vessels and persons arriving at New York, are :

1. The health officer of the port, whose duty it is to visit every vessel arriving, to send the sick (if any) to the floating hospital, or other place provided in accordance with law, and

to take general charge of all vessels arriving with disease on board. (*Laws of* 1863, *chap.* 358; 1865, *chap.* 613; 1866, *chap.* .)

2. The quarantine commissioners, who are a board of appeal from the health officer, and who are also required by law to perform certain duties in procuring proper buildings, &c (*Id*).

3. The commissioners of emigration, who have certain duties in connection with all persons who are not citizens, whether sick or well.

4. The metropolitan board of health, whose duty it is to provide for the protection of the health of the inhabitants of the metropolitan police district, comprising the counties of New York, Kings, Richmond, Westchester, and part of Queens.

The last named board derives its powers from chapters 74 and 686 of the laws of 1866, and at the present time especially, also from the proclamations issued under section 16 of chapter 74, copies of which are annexed to the affidavit of defendant Schultz.

Acting under the powers conferred upon them, the board of health has hired certain property known as the candle factory, at or near Seguine's Point, and has occupied certain other property adjoing, belonging to the state. In both cases they occupy these by permission and with the approval of the owners, and they had before this action was commenced incurred considerable expenses and many liabilities. They are acting with the approval, and so far as necessary in concert with the other boards.

An injunction is brought against them to forbid them from using what is for the purposes of this action their own.

It is alleged they *intend* so to use it, that it will be a nuisance to the people of the vicinity, and incidentally of Richmond county generally; and this nuisance is described in the complaint and affidavits (folio 11) as consisting in the proposed occupation of the premises " for the reception and care of patients, persons, clothing and baggage," from vessels under quarantine infected with cholera and other quar-

antinable diseases, and from the floating hospital ships," and (folio 12) that it is intended to "establish and maintain hospitals and other buildings, and the appurtenances thereto, for quarantine purposes, and establish and maintain a quarantine establishment on the premises."

This proposed use, it is alleged (folio 13), is "wholly unjustifiable and unlawful, and contrary to law. It will, it is averred, be ruinous to the property and pecuniary interests" of the plaintiffs and others situated like them, will greatly depreciate their property and "greatly endanger (folio 15) the lives and health" of a large population, and "would be like to introduce and to cause the introduction of pestilence, and contagious and infectious disease among said population and among the plaintiffs and their families."

The injunction asked is, to forbid the bringing to the premises of any persons, baggage, clothing or other material matter or thing, the subject of quarantine, brought or landed from on board of any floating hospital * * * or any vessel * * * under quarantine," or "any person, matter or thing infected with any infectious or contagious disease, the subject of quarantine," or from using the premises "as a hospital or hospitals, or building or buildings for quarantine purposes, or for the reception, care or treatment of sick persons or other persons from the floating hospitals or vessels quarantined, or "who may have been exposed to any such infectious or contagious disease." An injunction is also asked against maintaining any quarantine establishment or buildings, or operations.

The affidavits submitted in reply, show that the plaintiffs have erected a fabric from their brains which has no foundation save in their fears. All that is proposed by the board of health is, to use the premises as a place for the temporary observation of persons who have arrived on vessels on which cases of cholera have occurred; persons whom the health officer may feel obliged, from the limited convenience at his control, to allow to pass from quarantine and to mingle with the community, but whom the board of health deems it for the general interest to keep under observation for a time;

that no such persons are under any circumstances to be landed; that no one who has been exposed to any disease other than cholera, is to be landed; that a guard is to be kept round the premises, which are surrounded by a high board fence, and that practically, there are no inhabitants within half a mile of the place, and actually none at all within 1,500 feet.

The board of health proposes to use its own land for this purpose, and they do this in discharge of the duty imposed on them, to care for the health of not only New York, Kings and Westchester counties, but for Richmond county; and the measures they have adopted are, in their opinion, the best possible for that end.

Section 15 of chapter 74 of the Laws of 1866, requires the board of health, the health officer and the quarantine commissioners, to "co-operate together to prevent the spread of disease, and for the protection of life, and for the promotion of health."

By section 17 the board of health is required to "use all reasonable means for ascertaining the existence and cause of disease, or peril to life or health, and for averting the same throughout said district." By the same section they are authorized to exercise extraordinary powers, when there is imminent peril by reason of impending pestilence, which has been legally declared to be the case now.

The question now presented is in brief, will the court interfere with this board thus performing its duties in connection with others?

In endeavoring to furnish an answer to this question, we present the following points:

I. There is every presumption in favor of the legality and correctness of the action thus taken by public officers in the performance of their duty, and they can only be interfered with, in case their acts are clearly shown to be illegal.

II. Regarded independently of the statute law of the state, there is nothing in the proposed use of the premises that can justify the interference of the court.

1. The proposed use of the premises is not such an use as

is known to the law as a nuisance. (*Phœnix* agt. *Commissioners*, 1 *Abb.* 466 ; *S. C. on Appeal*, 12 *How.* 1.)

2. While injunctions are sometimes granted before judgment, to prevent the creation of anything known to the law as a nuisance, even that is done with extreme reluctance, and a preliminary injunction is *never* granted to prevent the establishment of a thing not in itself noxious, except in cases in which it is conclusively shown that the thing sought to be enjoined will necessarily be a nuisance, and furthermore that it is a marked and imperative case of imminent and irretrievable danger and injury. (*Phœnix* agt. *Commissioners*, 1 *Abb.* 466 ; *S. C. on Appeal*, 12 *How.* 1 ; 6 *Paige* 554 ; *Tichner* agt. *Wilson*, 4 *Halst. Ch.* 197 ; *Earl of Ripon* agt. *Hobart*, 1 *Coop. Sel. Cas.* 333 ; *S. C.* 3 *Mylne & Keen*, 119 ; *S. C.* 8 *Condensed English Ch.* 332, 469 ; *Attorney General* agt. *Chaver*, 18 *Vesey*, 211 ; *Barnes* agt. *Baker, Ambler*, 158 ; 3 *Atk.* ; *Haines* agt. *Taylor*, 10 *Beavan*, 75 ; *White* agt. *Cohen*, 19 *Eng. Law and Eq.* 149 ; *Attorney General* agt. *Sheffield Gas Co. Id.* 641.)

3. The court certainly cannot say, upon any evidence before it, that on the principles laid down in these cases a case for preliminary injunction is made out.

III. There is nothing in the proposed use of the premises that is forbidden by the statute law of the law of the state. The only statutes alleged to bear upon the question at all, are the quarantine acts. (*Laws of* 1863, *chap.* 318 ; *Laws of* 1865, *chap.* 613 ; *Laws of* 1866, *chap.*   .)

Of these, the law of 1863 is the one really applicable. The law of 1866 relates to a permanent quarantine to be established upon the west bank, and leaves the other provisions of the law of 1863 in full force.

1. The only thing expressly forbidden to be done by these statutes is, the construction of "warehouses, wet docks and wharves, with appropriate appurtenances for unloading and storing cargoes" (*Laws of* 1863, *chap.* 358, § 3). Inferentially also the establishment of a permanent quarantine hospital, is perhaps forbidden on Staten Island by the laws of 1863 and 1866.

IV. The proposed use of the premises is directly authorized by virtue of the act establishing the board of health, without reference to any other act. (*Laws of* 1866, *chap.* 74, § 16; *Resolutions of Board of Health approved by Governor, Exhibit B, to affidavit of Schultz.*)

V. The injunction heretofore granted must be dissolved. (*Belcher* agt. *Farrar,* 8 *Allen,* 325, 327, 329; *People ex rel. Savage* agt. *Board of Health,* 33 *Barb.* 344.)

HENRY W. JOHNSON, *and*
HENRY C. MURPHY, *for Commissioners of Quarantine.*

I. But two grounds are assigned or suggested in the complaint and affidavits for granting the injunction prayed for. They are the following:

1. That the use of the premises described in the complaint for the purposes therein stated, will be ruinous to the property and pecuniary interests of the plaintiffs, and of all other persons similarly situated and owning property, or residing in the vicinity of said premises.

2. That the use of said premises for said purposes, would greatly endanger the lives and health of the population in the vicinity of said premises, and would be likely to introduce and cause the introduction of pestilence and contagious and infectious diseases among said population.

II. The injunction clearly ought not to be granted upon the first ground assigned in the complaint; because—

1. If the use of the premises in question for the purposes stated in the complaint would, in fact, result in the pecuniary loss and injury which the plaintiffs allege, they have an ample remedy at law to recover their damages in case the defendants are acting without lawful authority.

2. Where a party has an adequate remedy at law by an action to recover damages, a court of equity will not grant relief by injunction. (*Watson* agt. *Hunter,* 5 *Johns. Ch.* 169; *Thompson* agt. *Mathews,* 2 *Edw.* 212; *Del. and Hudson Canal Co.* agt. *The N. N. & E. R. R. Co.* 9 *Paige,* 323; *Ben-*

*ton* agt. *City of Brooklyn,* 15 *Barb.* 375 ; *Barnes* agt. *McAllister,* 18 *How. Pr. R.* 534.)

3. It is not alleged or suggested that the defendants are irresponsible and unable to respond in damages, and therefore the court cannot assume that the plaintiffs could not be fully compensated for their loss in an action to recover damages.

III. The injunction ought not to be granted upon the second ground above stated, for the following, among other reasons :

1. The substance of that ground for granting the injunction is, that the use of the property for the purposes stated, will result in the creation of a *public nuisance* detrimental to the public health.

2. According to the complaint, the premises are to be used for *quarantine purposes* and as a part of the *quarantine establishment.* If used for such a purpose, the court cannot assume that a public nuisance will be created thereby. A quarantine establishment is not a nuisance *per se,* and has never been held to be such. If rightly and properly conducted it would be entirely harmless, and the court cannot assume that a quarantine upon these premises would be improperly conducted.

3. To justify the granting of an injunction to restrain the commission of an act on the ground that it will create a nuisance, it must appear that the act will necessarily result in creating that which was known to the common law as a nuisance, or is declared by statute to be such. (*Phœnix* agt. *The Commissioners of Emigration,* 1 *Abb.* 467 ; *Wetmore* agt. *Atlantic White Lead Co.* 37 *Barb.* 70.)

4. The use of these premises for quarantine purposes is nowhere prohibited by law, and on the contrary it is directly sanctioned by law in case the quarantine authorities deem such use necessary for the protection of the public health. The commissioners and health officer are vested with large discretionary powers in reference to persons under quarantine, and the act complained of would be clearly within the

scope of their discretion. (*See Laws of* 1863, *p.* 578, § 24; *p*. 584, § 37; *p.* 586, § 47.)

5. An act which has the sanction of law, and is performed under legal authority, cannot be a public nuisance. (*Harris* agt. *Thompson*, 9 *Barb.* 350; *Plant* agt. *Long I. R. R. Co.* 10 *Barb.* 26; *Leigh* agt. *Westervelt*, 2 Duer, 618; *Davis* agt. *The Mayor, &c.*, 14 *N. Y.* 506.)

6. The plaintiffs claim no ownership in or right to any part of the premises proposed to be used as stated in the complaint. If any injury results to them from the acts complained of, it will flow from an exercise of legislative authority in a matter over which the legislature had full control. Its will in all matters affecting the public health and general welfare is supreme, and cannot be questioned in a suit by a private individual. (*Wynehamer* agt. *The People*, 3 *Kern.* 411; *The People* agt. *Toynbee*, 2 *Parker C. R.* 490; *The Same* agt. *Draper*, 15 *N. Y.* 532; 1 *Kent's Com.* 448, 449, *mar. p.*)

IV. But the injunction should be denied for another reason, and that is that the premises are not to be used for any such purpose as is stated in the complaint.

The affidavits of all of the quarantine commissioners and of the health officer, all concur in the fact that there has never been any intention on the part of the quarantine authorities to use the premises for any other purpose than as a place for the detention of well passengers. And they all concur in the opinion that such use would be unattended with any injury or danger to the plaintiffs, or to any other person or persons. The affidavits of the physicians which have been read on the part of the plaintiffs, can have no weight against these opinions, because they are given upon a very different statement of the purposes to which the premises are to be appropriated.

V. For the reasons above assigned, the motion for a permanent injunction should be denied, and the temporary injunction should be dissolved.

J. F. BARNARD, J. The subject of quarantine is carefully

regulated by statute. It is determined by law what diseases are subject to quarantine, of what the quarantine establishment shall consist, and where its operations shall be carried on. This establishment consists first of "warehouses, wet docks and wharves." These are required to be "in the lower bay of New York, not on Staten Island, Long Island, or Coney Island." The second part of such establishment is "anchorage for vessels," and "this shall be in the lower bay, distant not less than two miles from the nearest shore."

The third is a "floating hospital," and this "shall be anchored in the lower bay, not less than two miles distant from the nearest portion of the quarantine anchorage and from the nearest shore." The fourth is a "boarding station," and this is directed to be the present floating hospital, and such other vessels as may be provided to be anchored so near the hospital as to offer the greatest dispatch in boarding vessels. The fifth is a burying ground which is located on the lands of the state at Seguine's Point, and last, the establishment consists of residences of officers and men not located by the act. On an arrival of infected vessels the sick are to be immediately transferred to the floating or other hospitals to be provided, and full power is given "to appropriate vessels for the service of the sick."

The well persons are to be set at liberty as soon as they may be with safety. All vessels, the subject of quarantine, shall anchor within the quarantine anchorage, "and there remain with all persons arriving thereon," until discharged by proper authority. The quarantine establishment is put under the control of the commissioners of quarantine, and their powers are not subject to the metropolitan board of health. General power is given the commissioners of quarantine to take all means necessary for the protection of the public health, according to the exigencies of the case, provided they are not inconsistent with the above provisions.

It seems quite clear, from these minute directions, that the legislature intended that Staten Island should not be a place where any operation of quarantine, except to bury the dead, should be carried on.

The very act establishing the present quarantine directed the land of the state at Seguine's Point to be sold without unnecessary delay, and the proceeds of such sale to be applied to the expenses of this quarantine as now established.

In violation of the law thus clearly expressed, the defendants, the commissioners of quarantine, or the defendants, the metropolitan board of health, or both jointly, claim the right and threaten to remove from the vessels which are the subject of quarantine, persons in whom there is no present manifestation of disease, in order that such persons may be detained at Seguine's Point, until time shall disclose whether they have the seeds of pestilence in them or not. This is purely and simply quarantine, and may not legally be done on Staten Island.

The plaintiffs make a case which, under well settled equitable principles, entitles them to an injunction restraining the defendants from committing the threatened acts, which, by law, they have no right to commit during the pendency of the action.