(3 Misc. Rep. 34.)

YOUNG et al. v. FLOWER et al.

(Supreme Court, Special Term, Suffolk County. February, 1893.)

1. HEALTH—POWER OF LOCAL BOARD.
    The board of health of a town, in the exercise of its power to guard against the introductions of contagious and infectious diseases, may not only isolate and control infected persons and things after they come within the town, but may also prevent the bringing of such persons or things within the town.

2. SAME—HEALTH OFFICER OF PORT OF NEW YORK—POWERS.
    Under Laws 1892, c. 486, which vests the general administration of the quarantine establishment of the port of New York in the health officer, and which (article 13, § 2) empowers him, in the presence of immediate danger, to take the responsibility of applying such additional measures as may be deemed indispensable for the protection of the public health, the power granted must be exercised within the territorial limits of the jurisdiction of the officer, and the emergency must actually exist, of which the officer is not to be the sole judge, and the act done must be fairly and reasonably appropriate for the emergency that has arisen.

3. SAME—DISCRETION.
    When so many vessels arrive from ports infected with cholera that the hospital accommodations of the quarantine establishment are inadequate to receive people sick from the disease or exposed to danger, an emergency has arisen, within the meaning of such statute; and the questions whether the passengers shall be detained on vessels or landed and isolated is one resting in the discretion of the health officer, as is also the selection of an appropriate site for landing; and, in the absence of an abuse of discretion, his decision in this respect will not be interfered with by the courts.

4. SAME—TERRITORIAL JURISDICTION.
    Laws relating to quarantine in the port of New York are not local, and the health officer of the port is a state officer; and in case of emergency like the above he has the power to go outside the statutory limits of the port, and land passengers temporarily in an adjoining county, though forbidden to do so by the local board of health.

5. SAME—PERMANENT QUARANTINE OUTSIDE OF PORT.
    The power does not authorize the health officer to hold the landing place in the adjoining county as a permanent annex to or for the overflow of the quarantine establishment of the port; and, if the probability of the recurrence of such an emergency can be foreseen, it is the duty of the officer to increase the local quarantine establishment, so that it will meet the demands that may be imposed on it.

Action by William H. Young and others, composing the board of health of the town of Islip, against Roswell P. Flower, William T. Jenkins, and others, for an injunction to restrain the landing of persons infected with cholera on Fire Island. Complaint dismissed.

The prayer for relief was as follows:

"That the defendants * * * be enjoined from bringing to the Surf Hotel * * * any person, baggage, clothing, or any other thing the subject of quarantine, brought from any vessel or quarantine station or elsewhere, or any person, matter, or thing infected or supposed to be likely to be infected with cholera, or from using said Surf Hotel * * * for quarantine purposes. * * * "

A preliminary injunction was obtained on September 12, 1892, from a single judge at special term, but was vacated by the general term on September 13, 1892, upon the ground that there was no power vested in a single judge to issue an injunction against a state officer. Code, § 605. The defendant Flower is the governor of the state; the defendant Jenkins is the health officer of the port of New York.

The plaintiffs founded their right to the relief demanded upon the supposition that they, as the board of health of Suffolk county, had a right to legislate respecting matters affecting the public health within their county; and particularly they claim that they had a right to make the order of September 10, 1892, which, in substance, forbids the landing of passengers from cholera-infected ships arriving at the port of New York at Fire Island, which is within their jurisdiction; and, secondly, upon the theory that quarantine must be exclusively maintained by such health officer "in the lower bay of New York, not on Staten island, not on Coney island, and not on Long island." On the 10th of September, 1892, the plaintiff board made the order just referred to, and recited, among other things, that the landing of such passengers would be dangerous to life and health and to the public health and safety within the town of Islip, and thereupon they formulated a resolution "prohibiting such landing under a penalty of $100 for every passenger so landed, and authorized the chairman of the board to appoint fifty special sanitary police with full power to prevent by all legal means such landing." The two theories upon which the plaintiffs predicate their right to maintain this action were challenged by the defendants, and they justified their action by the powers given by chapter 486, Laws 1892. For the purpose of simplifying the trial, every fact deemed necessary for the consideration of the court was agreed upon.

Fishel & Reed, (George W. Wingate, of counsel,) for plaintiff.

William H. Clark, Corp. Counsel, Charles Blandy, and E. J. Freedman, for defendants.

CULLEN, J. I think that the plaintiffs can maintain this action if the defendants' acts are without authority of law. The contention that plaintiffs' power to guard against the introduction of contagious and infectious diseases is limited to the isolation and control of infected persons or things after they come within the town, but is insufficient to prevent the bringing of such persons or things within the town, proceeds on a very technical, and to me, unsound, interpretation of the statute. The order made by the plaintiffs was, therefore, as to its general character, within the scope of their authority, and its validity must be tested by the powers conferred by statute on the defendant the health officer of the port of New York. That the general scheme of the quarantine law for the port of New York not only contemplates that the hospital structures, buildings, and wharves for quarantine purposes shall be located only in the lower bay of New York, and not on the adjoining lands of Staten island, Long island, or Coney island, but forbids the acquisition of land as a site for such purposes in any other place, is not only

clearly apparent from the statute itself, but was expressly decided by this court in Seguine v. Schultz, 31 How. Pr. 398, Barnard, J., presiding. That decision would be controlling on me if I had any doubt as to the proper construction of the law, but in that decision I entirely concur. That the detention of persons who may have been subject to infection from contagious diseases is a part of the quarantine system to the same extent as the isolation and care of those actually ill with such disease was also decided in the case cited. The only proper authority for the detention of such persons is that it is a part of the quarantine. I am entirely clear that there is no power in the quarantine officers to locate any part of the permanent quarantine establishment within Suffolk county, but this view does not control the disposition of the present case. By the existing law (chapter 486, Laws 1892) the general administration of the quarantine establishment of the port of New York is vested in the health officer. By section 13, art. 2, of the statute cited, it is provided that "he shall, in the presence of immediate danger, take the responsibility of applying such additional measures as may be deemed indispensable for the protection of the public health." I agree with the contention of the plaintiffs' counsel that such a power granted in general terms must be exercised—First, within the territorial limits of the jurisdiction of such officer; and, second, that the emergency must actually exist, of which the officer is not to be the sole judge; and that the act done or power sought to be exercised must be fairly and reasonably appropriate for the emergency that has arisen. But the power existing by common law in even private individuals in the case of impending calamity from a pestilence or fire is great. In Russell v. Mayor, 2 Denio, 474, it is said:

"The best elementary writers lay down the principle, and adjudications have for centuries sustained, sanctioned, and upheld it, that in case of actual necessity to prevent the spreading of a fire, the ravages of a pestilence, or any other great public calamity, the private property of any individual may be lawfully destroyed for the relief, protection, or safety of the many, without subjecting the actors to personal responsibility for the damages sustained."

In fact, there is no liability even in the public to indemnify the owner of property for such destruction, except as created by statute. Mayor v. Lord, 17 Wend. 285. Legislation has now largely, if not wholly, removed this right from private individuals, and intrusted it to public officers, and also provided for compensation from the public treasury, so that one may not suffer without indemnity for the relief of the many. I refer to the extent of the natural right of the community to show that the power, when intrusted to a public officer, should not be construed as limited by too narrow bounds.

It seems to me that an emergency had fairly occurred, within the meaning of the statute. So many vessels had arrived from ports infected with cholera that the hospital accommodations of the quarantine establishment had become inadequate to receive people sick from the disease and those who had been exposed to danger. This is conceded by the agreed statement of facts. Persons who had been subjected to the influence of contagion had, therefore, to be either detained on the infected ships, or other ships be obtained as a place for their detention,

or it was necessary to land and isolate them at some other point than that provided by the statute for permanent quarantine purposes. Certainly, not only a regard for the lives and health of such passengers themselves, but regard for public health, required that such persons should not unnecessarily be longer subjected to the danger of contagion. The question between vessels and a landing place was a fair subject for the exercise of discretion by the health officer, and the statement of facts does not show that the officer had any vessels available for the purpose of floating hospitals, or places of detention, other than one steamboat. It seems to me that in the contingency that had actually arisen the health officer was justified in securing some appropriate site for the temporary landing and isolation of these passengers, and I cannot say that the site selected was. inappropriate. Several sites were presented. Each had advantages, and each was subject to disadvantages, and it was for the health officer to determine which was preferable. If the hospitals of the quarantines should take fire, surely the health officer might land their occupants. Here the emergency was not so great or immediate as the one suggested, but still I think it was real and substantial. All this proceeds on the theory that the health officer acted within his territorial jurisdiction, for an emergency as to a matter of public health occurring in one town or county would not, without legislative authority, authorize the local authorities to enter within the limits of another town or county; otherwise I fear many localities would be disposed to impose their hospitals or pesthouses upon their neighbors. In the case of People v. Platt, 117 N. Y. 159, 22 N. E. Rep. 937, the defendant was ousted from the office of commissioner of quarantine on the ground of his residence in the county of Tioga. The decision did not, however, proceed on the ground that the office was a local one, but because the office was statutory, and it was within the power of the legislature to prescribe the conditions of eligibility to its enjoyment, the statute providing that such officers should be residents of the metropolitan police district. In Ferguson v. Ross, 126 N. Y. 459, 27 N. E. Rep. 954, it was decided that an act to prevent the deposit of carrion, dredged materials, etc., in New York bay and the North and East rivers was not local, but general. In the opinion there delivered by Judge Andrews it is said:

"But are laws regulating quarantine in the port of New York, or the landing of emigrants therein, local in the same sense as laws relating to city courts, or to a particular highway or street? The eighth section of the act of 1886 was manifestly enacted for the protection of the harbor of New York in the interest of commerce and navigation. The citizens of New York city may possibly have a greater stake in the matter than citizens in other localities, but the destruction or serious impairment of the harbor of New York would directly affect the prosperity of the state. It would impair the revenues, imperil its system of river, canal, and railroad transportation, and it is not too much to say that every industrial interest, agricultural or mechanical, would feel its blighting influence. A law having for its object the protection of navigation in the harbor of New York is, we think, general, and not local. The act is limited territorially, but the subject is both public and general."

I think that, under the principle thus declared, the health officer must be considered a state officer. This was the view entertained by the general term of this court when it vacated the preliminary injunction granted in this action. Hence if, under the stress of exigency, the

health officer could, in the disposition of persons suffering from disease or subject to contagion, go at all beyond the express area provided for that purpose by the statute, he could go to Suffolk county as well as to any other portion of the state. This view does not authorize the quarantine authorities to hold Fire island as an annex to or for the overflow of the quarantine establishment of the port of New York. This would plainly be illegal under the existing statute. If the probability of the recurrence of the condition existing last fall can be foreseen, it is the duty of such authorities, under the existing law, to increase the local quarantine establishment so that it will meet the demands that may be imposed on it. But this litigation presents only the question of the right to land passengers at the particular time it was done,—in September last. For the reasons given I think this act was in the power of the health officer, and the complaint should be dismissed.