TYLER *vs.* STRANG and THE TIOGA RAIL ROAD COMPANY.

Parol evidence to prove that an assignment of a contract, absolute on its face, was intended as a mortgage, may be given by persons who are not parties to the instrument, in support of the claims of creditors.

If an assignment of a contract is intended to operate as a mortgage, it is necessary to its validity, in respect to the property sought to be covered by it, as against the creditors of the assignor, that it should be accompanied by an immediate delivery, and be followed by an actual and continued change of possession, or filed as a chattel mortgage.

Actual notice to previous creditors of the assignor, of the claims of the assignee, under the assignment, is not equivalent to filing the assignment as a mortgage, as against such creditors.

The principle on which a subsequent purchase of property by one who had previously assumed to sell it, enures to the benefit of his vendee, is that of es-

Tyler *v.* Strang.

toppel, to avoid circuity of action, and is applicable only to cases where the first sale was with warranty.

An executory contract to sell personal property binds the vendor to convey to the purchaser, on the payment of the purchase money, not only his right to the property existing at the time of the contract, but the entire title. If he does not own it then, he is bound to procure it and vest it in the purchaser.

By a written contract, between Clark and Colborne, the former, upon the payment to him, his heirs or assigns, of the sum of $18,000, in the manner and at the times therein provided, agreed to sell and convey to the latter, his heirs or assigns, certain real estate described therein, " owned by C. Colket of Philadelphia;" and Colborne agreed to pay Clark the sum named, in installments. It was then provided that " the logs cut on the premises are all to be included in the above purchase and sale, subject however to the payment by the said Colborne in cash, on demand, in addition to the purchase money aforesaid, of the cost of cutting and delivering the same where they now are;" and Colborne agreed to convey to one W. any lands which he might have improved and built upon, under an agreement with Colket. It was further agreed " that the said Clark shall hold the logs now on the premises, and the lumber from the same, and the logs and lumber which the said Colborne may hereafter cut and make from the premises, together with the present mill, machinery and fixtures, &c., as security for the payment of the installments, as they shall from time to time become due and payable ; and the said Colborne is to effect and keep the said mill and lumber well insured and the policy assigned to the said Clark, for the payment to the amount of said policy; and no timber to be cut upon the premises, except sufficient to stock the mill," &c.

*Held,* that it was manifest from the terms of this contract, that it was not contemplated by the parties that the title to any portion of the property should be vested in Colborne until full payment of the purchase money. That Clark was to convey *upon* the payment thereof, and to *hold* the logs and the lumber as security for the payment of the installments. And that his obligation to convey was made dependent upon the payment, not of any particular installments, but of all of them.

*Held also,* that the logs and lumber upon the premises were not subject to attachment for the debts of Colborne, before the whole of the purchase money had been paid, but that a person deriving title thereto by purchase from Clark could hold the same, as against the creditors of Colborne.

Where both the assignor and assignee of a contract are citizens of this state, and the assignment is executed in this state, and the subject of the contract is personal property, upon the general principle that the *lex loci contractus* controls the nature, construction and the validity of the contract, the validity and effect of the assignment, and the delivery and change of possession of the property necessary to sustain it, depend upon our laws; although the property itself is situated in another state.

Where lumber, on being sold, is piled by itself, preparatory to shipping, and pos-

session of the whole is delivered, a measurement is not necessary, to vest the title in the purchaser.

It is only when something remains to be done which is by the contract a condition precedent to the passing of the title, that the title will not pass until the act be performed.

APPEAL from a judgment rendered upon the verdict of a jury. The action was brought to recover the value of a quantity of lumber. The defendants claimed title to the lumber, derived from a sale under a judgment recovered in Pennsylvania, in favor of the defendant Strang, and others, against Asaph Colborne, on a foreign attachment. The jury found a verdict in favor of the plaintiff for $230. His claim amounted to between $3000 and $4000; and he appealed from the judgment. The opinion of the court states the material facts appearing in evidence, and the legal questions arising on the trial.

*L. Tremain,* for the plaintiff.

*E. P. Brooks,* for the defendants.

*By the Court,* T. R. STRONG, J. The plaintiff gave in evidence, in support of his claim of title to the lumber in question, a contract between Eli C. Clark and Asaph Colborn, dated the first day of March, 1851, for the sale by the former to the latter, of certain lands in Tioga county, Pennsylvania, with the logs cut thereon—from which logs it was proved the lumber was manufactured; an assignment by Colborn of his interest in the contract to the plaintiff, dated the 3d day of April, 1851; and a bill of sale from Clark, dated the 5th day of January, 1852, of all his right, title and interest in the lumber to the plaintiff. The plaintiff also proved, that at the date of the contract between Clark and Colborn, and until the 11th day of April, 1851, Clark had not any right to or possession of the lands or the logs, and that on that day he took a contract from one Colket, who was then the owner of the land and logs, for the sale thereof to him. The defendants claimed title in the defendant Strang to the lumber, under Colborn, by virtue of an attach-

Tyler *v.* Strang.

ment in a suit in favor of Strang and others against Colborn and another, in the court of common pleas of Tioga county aforesaid, levied the 22d day of October, 1851, and a sale under a judgment in that suit, in favor of the plaintiffs therein, the 17th day of November, 1852. They contended that the assignment by Colborn to the plaintiff, of the contract from Clark, was as collateral security for a debt, and a mortgage, and that it was void as against Colborn's creditors, as to the logs, because it was not filed, as required by law in respect to chattel mortgages, and because there was not a sufficient delivery of the logs or lumber to the plaintiff. Evidence was given by the defendants to sustain their claims, portions of which evidence were objected to, and to the admission of which exceptions were taken.

The first question which I shall notice, arises upon the exception to the admission of parol evidence to prove the assignment to the plaintiff, of the contract from Clark, a mortgage. I think the evidence was properly received. The case of *Hodges* v. *The Tennessee Marine and Fire Insurance Company*, in the court of appeals, (4 *Selden*, 416,) appears to be directly in point in favor of the admission of the evidence. That was an action upon a policy of insurance, by the assignee of the policy, and the plaintiff at the trial, in order to establish an insurable interest in the assignor at the time of the assignment, had been allowed, against an objection taken by the defendant, to prove by parol evidence, that a deed which had been given by the assignor, to the plaintiff, of the premises insured, absolute on its face, was given as collateral security for a debt, and intended to operate only as a mortgage. The court stated that the question was whether in equity the assignor might have a bill to redeem, against the plaintiff, notwithstanding the form of conveyance, and held that he might; that such evidence was admissible in equity to show that a deed was intended as a mortgage ; and therefore sustained the decision receiving the evidence. The action in that case was a strictly legal one ; there was no allegation of fraud or mistake ;

and the plaintiff, the grantee in the deed, was permitted to give the evidence, in order to maintain the action. In the present case there would seem to be much greater propriety in allowing the evidence than in the case cited. Here it was not given by the defendants, who are not parties to the instrument, in support of the claims of creditors; and under the code a defendant is permitted, in a legal as well as an equitable action, to avail himself of all equitable matters in his defense. See also *Truscott* v. *King*, (2 *Selden*, 161.) It is proper to remark, that the evidence under consideration was not offered with a view to prove that the assignment of Colborn to the plaintiff was fraudulent as against Colborn's creditors; no such point was made at the trial.

If the assignment was a "conveyance intended to operate as a mortgage," it was necessary to its validity, in respect to the logs, as against the creditors of Colborn, that it should be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the logs, or filed as a chattel mortgage. The charge of the justice in this respect, assuming that it appeared there was no such delivery or change of possession, was unexceptionable.

There was evidence that Strang had notice of the claims of the plaintiff under the assignment, the day before the lumber was attached, and the counsel for the plaintiff requested the justice to charge the jury that if Strang had actual notice of the plaintiff's claim under the assignment, before the attachment was levied, such notice was equivalent to filing the mortgage, as against him and his partners, the plaintiffs in the attachment suit. The justice refused so to charge, and an exception was taken. I think the refusal was correct. The statute (*Laws of* 1833, *ch.* 279, § 1,) makes such an instrument "absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith," unless the instrument shall be filed as therein directed, in the case thereby provided for. No distinction is made by the statute between prior and subsequent creditors. It is not required

that the debt should have been contracted, or the property seized in good faith as to the mortgagee; the instrument is declared void in the case specified, as to all the creditors, without any qualification; and there is no ground upon which a qualification can be annexed by the court, by making a notice supply the place of filing. In respect to subsequent purchasers or mortgagees, they must, by the terms of the act, be such in good faith, which they cannot be if the purchase was made, or the mortgage was taken, with full notice; and hence it is settled as to them, that notice is equivalent to the filing of the instrument. (*Sanger* v. *Eastwood*, 19 *Wend.* 514. *Gregory* v. *Thomas*, 20 *id.* 17.)

The counsel for the plaintiff further requested the justice to charge, that if Clark did not own the logs at the date of his contract with Colborn, but acquired title to them before his sale to the plaintiff in January, 1852, the plaintiff acquired a valid title. This request was declined, and the jury were instructed that the purchase by Clark of Colket, in April, 1851, enured to the benefit of those claiming under the contract between Clark and Colborn, so long as the same remained valid and unrescinded. Both the request and the instruction appear to have been based on the assumption that the contract was one of present sale of the logs; and the position of the plaintiff was that it vested in the purchaser only such right as the seller had at the time; that there was no express warranty of title, and none would be implied, as Clark had not then possession of the logs; and therefore Clark was not estopped from setting up a subsequently acquired title for his own benefit. This position was sound, if the assumption on which it was founded was correct. The principle on which a subsequent purchase of property by one who had previously assumed to sell it, enures to the benefit of his vendee, is that of estoppel, to avoid circuity of action, and is applicable only to cases where the first sale was with warranty. But I am of opinion that the contract between Clark and Colborn was not a present sale; it was a mere agreement to sell, and bound the former to convey to the latter,

on the payment being made, not only his right to the logs ex-isting at the time of the contract, but the entire title; if he did not have it then, he was bound to procure it and vest it in the purchaser.

Another proposition submitted by the plaintiff's counsel for the charge was, that under the contract between Clark and Colborn, no title to the logs passed until full payment of all the installments. The justice refused so to charge, but advised the jury, as I understand the case, that the lien on the logs reserved by the contract, was discharged by the payment of what had become due under the contract up to the time of the levy of the attachment. In this refusal and ruling, I am satisfied a sub-stantial error was committed. The contract is designated there-in as articles of agreement between the parties to it, and by its terms Clark, "upon the payment to him, his heirs or assigns, of the sum of $18,000," in the manner and at the times pro-vided in the contract, "agrees to sell and convey to said Col-born, his heirs or assigns," certain real estate described therein, situate in the county of Tioga and state of Pennsylvania, and "owned by Coffin Colket, of the city and county of Philadel-phia;" and Colborn agrees to pay Clark the sum named, in installments. It is next stated, that "the logs cut on the prem-ises are all to be included in the above purchase and sale, sub-ject; however, to the payment by the said Colborn, in cash on demand, in addition to the purchase money aforesaid, of the cost of cutting and delivering the same where they now are;" and Colborn agrees to sell and convey to one Whitman, "the sawyer at the mill," any lands which he may have improved and built upon, under an agreement with Colket. The contract then proceeds: "And it is mutually agreed and declared and understood by and between the parties hereto, that the said Clark shall hold the logs now on the premises, and the lumber from the same, and the logs and lumber which the said Colborn may hereafter cut and make from the premises, together with the present mill, machinery and fixtures, and any fixtures or machinery which he may put upon the premises, as security for the payment of the installments, as they shall from time to

time become due and payable; and the said Colborn is to effect and keep the said mill and lumber well insured, and the policy assigned to the said Clark, for the payments to the amount of said policy, and no timber to be cut upon the premises aforesaid during the pendency of this agreement, except sufficient to stock the mill, or any mills which he may erect upon said premises. It is manifest, I think, from the terms of the contract, that it was not contemplated by the parties that the title to any portion of the subject of it should be vested in Colborn until full payment of the whole purchase money. Clark was to convey *upon* the payment thereof, and to *hold* the logs and the lumber as security for the payment of the installments. His obligation to convey was made dependent upon payment, not of any particular installments, but all of them. The parties evidently intended that Clark should, for his abundant security, retain the title after he should acquire it from Colket, except as he should give Colborn permission to make sales. (*Strong* v. *Taylor,* 2 *Hill,* 326.) The importance of this point is apparent from the consideration that if the fair import of the contract be as I have stated, the lumber in question was not subject to attachment for the debts of Colborn; and the plaintiff, aside from any question of fraud, acquired the title to it, so far as is necessary to sustain this action, under the bill of sale from Clark to him in January, 1852.

Evidence was given at the trial, on the part of the plaintiff, to prove that the plaintiff, by an agent of his, took possession of the lumber in August, 1851; and the justice charged the jury that the delivery of possession must have been sufficient to make a transfer of personal property valid, by the laws of Pennsylvania, which required an actual and absolute, not an implied or qualified delivery." The plaintiff and Colborn were citizens of this state, the assignment of the contract with Clark was made in this state, and the logs were personal property; and upon the general principle that the *lex loci contractus* controls the nature, construction and validity of the contract; it is clear, I think, that the validity and effect of the assignment, and the delivery and change of possession of the logs necessary

Tyler *v.* Strang.

to sustain it, depend upon our laws. (2 *Kent's Com.* 455. *Van Buskirk* v. *The Hartford Fire Ins. Co.*, 14 *Conn.* 583. *Clark* v. *Tucker*, 2 *Sandf.* 157.)

The jury were also advised, in reference to taking possession of the lumber by the plaintiff's agent, that if a subsequent measurement of the lumber was required, to ascertain the quantity, the title would not pass until such measurement was made. But the evidence tended to prove that the lumber was piled by itself, preparatory to shipping, and that possession of the whole of it was delivered. If such was the fact, a measurement was not necessary to vest the title in the plaintiff. It is only when something remains to be done which is by the contract a condition precedent to the passing of the title, that the title will not pass until the act be performed. (*Dennis* v. *Alexander*, 3 *Barr's Rep.* 50. 2 *Kent's Com.* 496, *note* 2.) In *Crofoot* v. *Bennett*, (2 *Comstock* 258,) it was held that a delivery of a brick-yard, on a sale of a portion of the bricks by the thousand, not counted or marked, passed the property in those sold; that it was left to the vendee to make his own selection.

Several other questions are presented in the case, and in the points made on the part of the plaintiff, but the consideration of them is not necessary.

A new trial must be granted, with costs to abide the event.

[MONROE GENERAL TERM, December 3, 1855. *Selden, T. R. Strong* and *Welles,* Justices.]