[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 613 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 614 
The plaintiffs' right to recover must depend on the construction of the agreement between the defendants Furniss and Brown, concerning the sale of the boat Rhode Island. If the agreement amounted to an executed sale of one-half the boat, then the defendant Furniss became a joint owner, and is jointly liable with Brown for the repairs and alterations in question. If, on the other hand, it was executory merely and passed no title, he cannot be charged as owner, and there is nothing else in the case upon which his liability can arise. The evidence, indeed, shows that, while the repairs and alterations were going on, he was present on one or more occasions, examined the work as it proceeded, and gave some directions which were followed. But these acts were natural under the circumstances, and may be appropriately referred to his relation *Page 615 
to the boat under either construction of the contract. As soon as the repairs were finished he was to become, if not already, a joint owner, he was to sail with the vessel to the western coast of America, and, in general, was to be the managing owner. He therefore had a direct interest in attending to the repairs and alterations, so as to fit her for a new and more hazardous employment. It should be added that there is no evidence tending to show that the work was done on the sole or joint credit of Furniss, or that the plaintiffs were at all influenced by any act or declaration on his part, except, perhaps, as to the manner in which some of the alterations were made. On the contrary, the presumption clearly is that, as between Brown and him, the former was to fit out the vessel for her new employment; he contracted with the plaintiffs on his own account to put her in the condition in which he had engaged to deliver her.
The question then is, whether the written agreement concerning the vessel passed the title to one-half immediately to the defendant, and this inquiry is by no means free from difficulty. There is no doubt that the phrase which stands at the commencement of the contract, "William H. Brown sells," c., imports of itself an executed sale. But the books furnish abundant evidence that phrases of this kind are used in a very loose sense, and that their literal signification is often overruled by the tenor and purpose of the whole instrument. So a party to a contract may say "he agrees to sell," and yet the intention be entirely manifest that the title shall pass immediately. Such phrases are quite inconclusive, and are often made to yield to other terms of the contract evincing a different design.
Looking thus at the agreement the first inquiry which presents itself is, whether Furniss placed himself under any obligation to pay for one-half the boat until she should be fitted up and prepared for the new service intended. I think he did not. He was to pay $25,000 in fifteen months by his "notes to be dated from the date said steamboat *Page 616 
Rhode Island is out of the carpenter's hands, fit and ready for sea," c., and Brown was to proceed and fit her up in a suitable manner for a voyage to the Pacific ocean, and for trade on the western coast of America. When were the notes to be given? The fair interpretation of the language is, that they were to be given when this engagement on the part of Brown was fulfilled, and as Furniss was not to pay except by his notes, the consequence must follow that no obligation arose on his part until the condition should be performed. This construction is not only the most obvious one from the language used, but it harmonises better than any other with the general purpose of the contract. The "Rhode Island" was, at the time, fitted for transportation of passengers on the Sound, but this was not the service in which Furniss proposed to engage. He contemplated sailing her to the Pacific ocean, and for that service he wished to purchase an interest in her; but as that demanded a further expenditure of some $10,000 in repairs and alterations, he might with great reason require the necessary changes to be made before taking the title and placing himself under so large an obligation for the purchase money. I am greatly mistaken if this is not the prevailing idea of the contract.
To bring the question to a still closer test, it may be supposed that Brown had totally refused to perform his part of the agreement, or that the vessel was destroyed by fire. Would Furniss have been bound to give his notes for the $25,000? It seems to me clearly, that he would not. Against these contingences he protected himself in the clause providing that the notes were to be given when the boat was "out of the carpenter's hands fit and ready for sea."
The clause concerning the outfit alterations, c., and expressing the obligation of Furniss to pay one half of that expense not exceeding $10,000, is in harmony with the views which have been stated. His notes upon this part of the contract were also to be given when the work was done and *Page 617 
on fifteen months time, in other words, they were to be given and payable at the same time as the notes for the estimated present value of the vessel. This certainly has a tendency to show, that the purchase, and the further labor and expense to be incurred by the seller to fit her for the uses intended were not matters considered independently by the parties. The division of the entire sum into two parts is not difficult to account for. The value of the vessel in her present condition could be estimated, but as the cost of preparing her for an ocean steamer, to be employed on a distant service was unknown, the parties were therefore unable to state in one sum the whole price to be paid. To become the owner of one half, Furniss was willing to assume a present value as the basis of the price he was to pay, and then to add one half of the future expenditure required within the limit specified, Upon this theory I think the parties contracted, and according to it, the title would not pass upon the ground distinctly, that the price of the boat was unascertained until further acts should be done by the seller. (Ward v. Shaw, 7Wend., 404; Outwater v. Dodge, 7 Cow., 85; McDonald v.Hewett, 15 John, 349; Rusk v. Davis. 2 Maul. Sel.,
397).
If I am right in the conclusion that the contract imposed upon Furniss no obligation to pay any part of the price until the boat was completed by the seller in the manner specified, then it is quite clear that he had not acquired and did not hold the title while the work in question was in progress. If we say otherwise, then we must adopt the absurd conclusion that while his obligation to pay had not arisen, and might never arise in consequence of the non-performance of the condition precedent, he was nevertheless clothed immediately with all the rights of an owner. He might even refuse to give the notes after the other party had fully performed the condition, or he might, in the meantime, become a bankrupt, so that they would be of no value when given, and yet the title in him would be perfect. It is true *Page 618 
where there is a complete sale of goods, without credit, the title is said to pass before payment and without delivery but the vendor is not bound to deliver until payment is made. This is sometimes called a lien for the price. But the plaintiffs' theory of the present case is that one-half the boat was both sold and delivered at the making of the contract. If not delivered at that time, and certainly the terms of the contract left her in the exclusive possession of Brown, then plainly the title did not pass, because there were further acts to be done before the defendant was bound to accept a delivery, or give his notes in payment. (2 Kent Com., 495, and note.)
Upon the best consideration I can give the case, my conclusion is that the contract was executory, that it left neither of the parties in the hands of the other, that Furniss was not bound to pay the $25,000 until such a boat was delivered as the agreement called for, and that Brown did not part with the title until he had completed the vessel and the notes were given in payment therefor.
The judgment should be reversed and a new trial granted.