## HARVEY W. HYDE, RESPONDENT, *v.* JOHN P. P. LATHROP, APPELLANT.

*Replevin—Delivery—Title.*

When property contracted to be delivered at a certain place, and at a certain price, has been delivered at the place so that it can be identified, and so that nothing further remains to be done except perhaps to measure or count, so as to determine the amount to be paid, the delivery is complete, and the title is fully vested in the vendee.

*G. P. Comstock* for Appellant.
*I. R. Strong* for Respondent.

DAVIES, CH.J.—This action is in the nature of replevin, for about 7,000 flour-barrel staves.

The Plaintiff, and Hitchings and Oliver, made a contract in writing, in these words: " $30. Received of H. W. Hyde, thirty dollars, to apply on thirty thousand flour-barrel staves, at seven dollars per thousand, gross count, which are to be delivered at the Buffalo, Corning, and Genesee Valley Railroad depot, within three weeks. Dated, Le Roy, June 26, 1856. To be delivered on the cars.

(Signed)        " SCOVILLE HITCHINGS,<br>" WILLARD OLIVER."

The referee who tried the action found the following facts:

That on the 26th of June, 1856, the Plaintiff took from Hitchings and Oliver the contract above mentioned; that, at the time of the making of the contract, the Plaintiff paid to said Hitchings and Oliver $30; that on the 8th day of July afterward he paid them the further sum of $30 ; that on the 1st day of July, 1856, he paid them the further sum of $25 ; that on the 26th day of August, aforesaid, he paid them the further sum of $30 ; and on the 15th of September, of the same year, he paid them the further sum of $10.

After the execution of said contract, and in the month of July, 1856, the said Hitchings and Oliver delivered to the Plaintiff

10,464 staves, under and upon said contract, upon a car at the railroad depot at Le Roy, and the same were taken to Scottsville, and received by the Plaintiff. That after the making of the said contract aforesaid the same was modified, so that the said Hitchings and Oliver were not bound to deliver the staves upon the cars, at the depot aforesaid, except the one load of 10,464, delivered in the month of July aforesaid, and that the balance of said 30,000 staves was to be delivered at the said railroad depot at Le Roy aforesaid. That after the delivery of the said 10,464 staves, and before the 21st of September, 1856, the said Hitchings and Oliver drew and delivered about 7,000 staves at the railroad depot in Le Roy, and piled them near the railroad track, in pursuance of said modified contract, and to apply on the same, being the same staves mentioned and described in the complaint. That upon said 7,000 staves, one Alonzo S. Upham had a claim or lien for $7.50, which was subsequently paid by the Defendant in this action. That on the 9th of November, 1855, Olmstead and Adams recovered a judgment, before a Justice of the Peace, against said Oliver, for $22.68, and execution was issued thereon, and the same was renewed from time to time, and was finally renewed August 14, 1856.

That on the 26th of August, 1856, one Clark also duly recovered a judgment, before a Justice of the Peace, against said Oliver, and execution was thereupon issued on said last-mentioned judgment to one Shumway, a constable, who had the execution on the previous judgment, and who had levied on 3,500 of the staves in controversy, and which levy had been made after said staves had been delivered at the depot at Le Roy, aforesaid. That on the 26th of August, 1856, said Clark recovered another judgment against said Oliver, before the same Justice, for $9.84, upon which execution was issued, on the 9th of September, 1856.

On the said 9th of September the executions upon the judgments of Clark were placed in the hands of Shumway, the constable, and he entered upon them on that day a memorandum of a levy on the same day.

On the 20th day of September, 1856, Shumway, the constable,

sold, on the three executions before named, the whole of the staves in controversy, about 7,000 in number, 3,500 having been drawn to the depot between the day of the levy and the day of sale, and said staves were bid off for Defendant, and removed by him.

That Hitchings and Oliver were partners in getting out the staves in question, and said Oliver died a few days prior to October 4, 1856.

That on the 14th day of October, 1856, the said Hitchings, as survivor, made an assignment and transfer of all the right and title of said Hitchings and Oliver, of, in, and to said staves to the Plaintiff.

The referee found the property in the staves in question, at the time of the taking of them by the Defendant, to be in the Plaintiff, subject to the lien of $7.50 of the said Upham.

That the value of the staves at the time of the taking the same by the Defendant was $45, after deducting Upham's lien.

That the damages for the detention of the staves were $12.43.

The referee found as conclusions of law : 1. That at the time of the taking of the staves, the Plaintiff was entitled to possession of them as owner. 2. That the lien of Upham did not give to the Defendant the right to take and hold the staves. 3. That the payment of the lien of Upham did not operate as an assignment of the lien of Upham to the Defendant. The referee gave judgment for the Plaintiff in accordance with his report, and judgment thereon was affirmed at the General Term.

Upon the facts found by the referee, and those which we are authorized to assume he found, there is no serious embarrassment in sustaining this judgment. The real question in the case is, in whom was the property of the 7,000 staves at the time of the levy thereon by the constable—in the Plaintiff, or in Hitchings and Oliver ? The referee has found as a fact that the property was in the Plaintiff, subject to the lien thereon of Upham for the $7.50.

If this were purely a question of fact, this finding is conclusive upon this point. But it cannot be questioned that the title to the staves would become absolute in the Plaintiff by a delivery of

them, and an acceptance thereof. Now, the referee has distinctly found that such delivery was made, in conformity with the terms of the modified contract, and, to sustain the judgment upon the referee's report, we are warranted in assuming that he also found that the same had been accepted by the Plaintiff.

These facts show that the title of the staves was vested absolutely in the Plaintiff, and there was left no leviable interest in the Defendants, on the executions in the hands of the constable. The cases of Crofoot *v.* Bennett (2 Com. 258), and Tyler *v.* Strang (21 Barb. 198), are satisfactory and conclusive authorities, that the title to these staves vested absolutely in the Plaintiff, upon their delivery at the railroad depot. The general rule undoubtedly is, that if goods be sold while mingled with others, by weight, number, or measure, the sale is incomplete, and the title continues with the seller, until the bargained property be separated and identified (2 Kent's Com. 496); and the reason is, that the sale cannot apply to any article until it is clearly designated, and its identity thus ascertained. In Crofoot *v.* Bennett (supra), Judge Strong said : " But if the goods are clearly identified, then, although it may be necessary to number, weigh, or measure them, in order to ascertain what would be the price of the whole, at a rate agreed upon between the parties, the title will pass. If a flock of sheep is sold at so much the head, and it is agreed that they shall be counted after the sale, in order to determine the entire price of the whole, the sale is valid and complete."

In Tyler *v.* Strang (supra), a quantity of lumber was piled up and delivered, but the exact quantity, and the amount to be paid therefor, could not be ascertained until a measurement thereof had been made. The evidence tended to prove that the lumber was piled by itself, preparatory to shipping, and that possession of the whole of it was delivered. The Court say : " If such was the fact, a measurement was not necessary to vest the title in the Plaintiff. It is only when something remains to be done, which is by the contract a condition precedent to the passing of the title, that the title will not pass until the act be performed."

In the case at bar, nothing remained to be done, after the delivery of the staves at the railroad depot, but to ascertain the quantity, for the purpose of determining the amount to be paid therefor.

By the contract the same were to be paid for "at seven dollars per thousand, gross count."

Under such circumstances, a count was not necessary to vest the title in the Plaintiff. The correct rule for determining whether the title passed to the vendee of articles to be manufactured by the vendor, is undoubtedly well stated by Judge Harris in Comfort *v.* Kiersted (26 Barb. 472). In that case the contract was for the manufacture and delivery of shingles, with a proviso that they should become the property of the vendee, as manufactured. Judge Harris says: "Before the title would vest, even after the shingles had been made, something must have been done which would amount at least to a constructive delivery. The shingles must have been in some way designated and set apart, so as to be capable of being identified as the property of the purchasers."

All these requirements are found in the case now under consideration.

It may be conceded that the admission of the newspaper, under date of Sept. 3, 1856, containing the advertisement of a circus to be held at Le Roy on the 8th of that month, for the purpose of identifying the day when the Plaintiff was in that place, was not competent evidence to prove the fact that a circus was held there on that day.

The Plaintiff had testified in his cross-examination that he was in Le Roy before the 15th of September, and said "it was on the day of the circus;" that "these staves were then there, on the west side of the depot; about 7,000."

It was not claimed, on the part of the Plaintiff, that he did anything with, or in respect to, the staves at the time he thus saw them.

The constable made his levy upon half of them on the 8th of September, and on the 9th upon the whole 7,000. It is therefore

undeniable that the whole 7,000 staves had been delivered at the railroad depot anterior to the 8th day of September, in pursuance of the terms of the modified contract; and if such delivery vested the title to the staves in the Plaintiff, as it is believed it has been shown it did, then it follows that it was wholly immaterial upon what day the Plaintiff first saw the staves. The fact of his seeing them, or the time when, were not elements in the vesting the title to them in him, and the admission of this newspaper notice worked, therefore, no injury to the Defendant.

These considerations dispose of all the grounds urged upon us for a reversal of this judgment.

We do not see any sufficient reasons for such reversal, and we are therefore of the opinion that the judgment should be affirmed, with costs.

Affirmed.

JOEL TIFFANY,
State Reporter.
