## HYDE *v.* LATHROP.

### December, 1867.

Under a contract for the sale of thirty thousand barrel staves, at a specified rate per thousand, to be delivered at a designated railroad depot,—*Held*, that delivery of seven thousand at the depot was sufficient to pass the title of the seller in the staves that were so delivered, although the buyer had not seen them, and no count had been made to ascertain the amount to be paid.

Harvey W. Hyde sued John P. P. Lathrop, in the supreme court, in an action in the nature of replevin, for about seven thousand flour barrel staves.

The plaintiff, and Hitchings, and Oliver, made a contract in writing, in these words:

"$30. Received of H. W. Hyde, thirty dollars, to apply on thirty thousand flour barrel staves, at seven dollars per thousand, gross count, which are to be delivered at the Buffalo, Corning & Genesee Valley Railroad depot, within three weeks To be delivered on the cars. Dated Le Roy, June 26, 1856.

(Signed) "SCOVILL HITCHINGS,<br>WILLARD OLIVER."

The referee who tried the action found the following facts: That, on June 26, 1856, the plaintiff took from Hitchings & Oliver the contract above mentioned. That at the time of the making of the contract the plaintiff paid to said Hitchings & Oliver thirty dollars. That on July 8 afterward, he paid them the further sum of thirty dollars. That on July 1, 1856, he paid them the further sum of twenty-five dollars. That on August 26, aforesaid, he paid them the further sum of thirty dollars; and on September 15 of the same year, he paid them the further sum of ten dollars. After the execution of said contract, and in the month of July, 1856, the said Hitchings & Oliver delivered to the plaintiff ten thousand four hundred and sixty-four staves, under and upon said contract, upon a car

at the railroad depot at Le Roy, and the same were taken to Scottsville, and received by the plaintiff. That after the making of the said contract aforesaid, the same was modified so that the said Hitchings & Oliver were not bound to deliver the staves upon the cars at the depot aforesaid, except the one load of ten thousand four hundred and sixty-four, delivered in the month of July aforesaid, and that the balance of said thirty thousand staves was to be delivered at the said railroad depot at Le Roy aforesaid. That after the delivery of the said ten thousand four hundred and sixty-four staves, and before September 21, 1856, the said Hitchings & Oliver drew and delivered about seven thousand staves at the railroad depot in Le Roy, and piled them near the railroad track, in pursuance of said modified contract, and to apply on the same, being the same staves mentioned and described in the complaint. That, upon said seven thousand staves, one Alonzo S. Upham had a claim or lien for seven dollars and fifty cents, which was subsequently paid by the defendant in this action. That on November 9, 1855, Olmstead & Adams recovered a judgment before a justice of the peace against said Oliver, for twenty-two dollars and sixty-eight cents, and execution was issued thereon, and the same was renewed from time to time, and was finally renewed August 14, 1856. That on August 26, 1856, one Clarke also duly recovered a judgment before a justice of the peace against said Oliver, and execution was thereupon issued on said last-mentioned judgment to one Shumway, a constable, who had the execution on the previous judgment, and who had levied on thirty-five hundred of the staves in controversy, and which levy had been made after said staves had been delivered at the depot at Le Roy aforesaid. That on August 26, 1856, said Clarke recovered another judgment against said Oliver, before the same justice, for nine dollars and eighty-four cents, upon which execution was issued on September 9, 1856.

On the said September 9 the executions upon the judgments of Clarke were placed in the hands of Shumway, the constable, and he entered upon them a memorandum of a levy on the same day. On September 20, 1856, Shumway, as constable, sold on the three executions before named, the whole of the staves in controversy, about seven thousand in number, three thou-

sand five hundred having been drawn to the depot, between the day of the levy and the day of sale, and said staves were bid off for defendant and removed by him.

That Hitchings and Oliver were partners in getting out the staves in question, and said Oliver died a few days prior to October 4, 1856. That, on October 14, 1856, the said Hitchings, as survivor, made an assignment and transfer of all the right and title of said Hitchings and Oliver, of, in and to said staves, to the plaintiff.

The referee found the property in the staves in question, at the time of the taking of them by the defendant, to be in the plaintiff, subject to the lien of seven dollars and fifty cents of the said Upham. That the value of the staves at the time of the taking of the same by the defendant was forty-five dollars, after deducting Upham's lien. That the damages for the detention of the staves were twelve dollars and forty-three cents. The referee found, as conclusions of law:

1. That, at the time of the taking of the staves, the plaintiff was entitled to the possession of them as owner.

2. That the lien of Upham did not give to the defendant the right to take and hold the staves.

3. That the payment of the lien of Upham did not operate as an assignment of the lien of Upham to the defendant.

The referee gave judgment for the plaintiff in accordance with his report.

*The supreme court*, at general term, affirmed the judgment, upon substantially the same grounds as those assigned by this court.

*George F. Comstock*, for defendants, appellants ;—Cited Comfort *v.* Kiersted, 26 *Barb.* 472; Andrews *v.* Durant, 11 *N. Y.* (1 *Kern.*) 40; Newcomb *v.* Cramer, 9 *Barb.* 402; Johnson *v.* Hunt, 11 *Wend.* 138; Ward *v.* Shaw, 7 *Id.* 405; *Pothier on Contr. of Sale*, part 4, 308; Olyphant *v.* Baker, 5 *Den.* 381 ! *Add. on Contr.* 223, 224; 1 *Pars. on Contr.* 441; *Plowden*, 298; 8 *Dow. & R.* 703; 5 *Barn. & C.* 862; Hanson *v.* Meyer, 6 *East*, 227; Withers *v.* List, 4 *Camp.* 237; 2 *Bing. N. C.* 151; 3 *N. H.* 382; 25 *Penn.* 203; 18 *Id.* 91; 14 *Maine*, 400; 3 *Barn. & A.* 321,

*T. R. Strong,* for plaintiff, respondent;—Cited Clark *v.* Dales, 20 *Barb.* 64, and cases cited; Scovill *v.* Griffith, 12 *N. Y.* (2 *Kern.*) 509; Crofoot *v.* Bennett, 2 *N. Y.* (2 *Comst.*) 258; Tyler *v.* Strang, 21 *Barb.* 198; Wooster *v.* Sherwood, 25 *N. Y.* 278; Grant *v.* Morse, 22 *Id.* 323; Brainerd *v.* Dunning, 30 *Id.* 216.

BY THE COURT.—DAVIES, Ch. J.—Upon the facts found by the referee and those which we are authorized to assume he found, there is no serious embarrassment in sustaining this judgment. The real question in the case is, in whom was the property of the seven thousand staves at the time of the levy thereon by the constable,—in the plaintiff or in Hitchings and Oliver? The referee has found as a fact that the property was in the plaintiff, subject to the lien thereon of Upham for the seven dollars and fifty cents.

If this were purely a question of fact, this finding is conclusive upon this point. But it cannot be questioned that the title to the staves would have become absolute in the plaintiff by a delivery of them and an acceptance thereof. Now, the referee has distinctly found that such delivery was made in conformity with the terms of the modified contract; and to sustain the judgment upon the referee's contract, we are warranted in assuming that he also found that the same had been accepted by the plaintiff.

These facts show that the title of the staves was vested absolutely in the plaintiff, and there was left no leviable interest in the defendant in the executions in the hands of the constable.

The cases of Crofoot *v.* Bennett, 2 *N. Y.* (2 *Comst.*) 258, and Tyler *v.* Strong, 21 *Barb.* 198, are satisfactory and conclusive authorities that the title to these staves vested absolutely in the plaintiff, upon their delivery at the railroad depot. The general rule undoubtedly is, that if goods be sold while mingled with others by weight, number or measure, the sale is incomplete, and the title continues with the seller, until the bargained property be separated and identified. 2 *Kent Com.* 496. And the reason is that the sale cannot apply to any article until it is clearly designated and its identity thus ascertained.

In Crofoot *v.* Bennett, *supra,* Judge STRONG said: "But if the goods are clearly identified, then, although it may be neces-

sary to number, weigh or measure them, in order to ascertain what would be the price of the whole, at a rate agreed upon between the parties, the title will pass. If a flock of sheep is sold at so much the head, and it is agreed that they shall be counted after the sale, in order to determine the entire force of the whole, the sale is valid and complete."

In Tyler *v.* Strong, *supra,* a quantity of lumber was piled up and delivered, but the exact quantity and the amount to be paid therefor could not be ascertained, until a measurement thereof had been made. The evidence tended to prove that the lumber was piled by itself, preparatory to shipping, and that possession of the whole of it was delivered. The court say: " If such was the fact, a measurement was not necessary to vest the title in the plaintiff. It is only when something remains to be done, which is by the contract a condition precedent to the passing of the title, that the title will not pass until the act be performed."

In the case at bar nothing remained to be done after the delivery of the staves at the railroad depot, but to ascertain the quantity for the purpose of determining the amount to be paid therefor.

By the contract the same were to be paid for at " seven dollars per thousand, gross count." Under such circumstances a count was not necessary to vest the title in the plaintiff. The correct rule for determining whether the title passed to the vendee, of articles to be manufactured by the vendor, is undoubtedly well stated by Judge HARRIS in Comfort *v.* Kiersted, 26 *Barb.* 472. In that case the contract was for the manufacture and delivery of shingles, with a proviso, that they would become the property of the vendee as manufactured. Judge HARRIS says: " Before the title would vest, even after the shingles had been made, something must have been done which would at least amount to a constructive delivery. The shingles must have been in some way designated and set apart, so as to be capable of being identified as the property of the purchasers."

All these requirements are found in the case now under consideration.

It may be conceded that the admission of the newspaper,

Hyde *v.* Lathrop.

under date of September 3, 1856, containing the advertisement of a circus, to be held at Le Roy, on the 8th of that month, for the purpose of identifying the day when the plaintiff was in that place, was not competent evidence to prove the fact that a circus was to be held there on that day. The plaintiff had testified on his cross-examination that he was in Le Roy before September 15, and said: "It was on the day of the circus." that "these staves were then there, on the west side of the depot, about 7,000."

It was not claimed on the part of the plaintiff that he did any thing with, or in respect to, the staves, at the time he thus saw them.

The constable made his levy upon half of them on September 8, and on the 9th upon the whole seven thousand. It is, therefore, undeniable that the whole seven thousand staves had been delivered at the railroad depot, anterior to September 8, in pursuance of the terms of the modified contract, and if such delivery vested the title to the staves in the plaintiff, as it is believed it has been shown it did, then it follows that it was wholly immaterial upon what day the plaintiff first saw the staves.

The fact of his seeing them, or the time when, were not elements in the vesting the title to them in him, and the admission of this newspaper notice worked, therefore, no injury to the defendant.

These considerations dispose of all the grounds urged upon us for a reversal of this judgment.

We do not see any sufficient reasons for such reversal, and we are, therefore, of the opinion that the judgment should be affirmed, with costs.

All the judges concurred, except PARKER and PORTER, JJ.

Judgment affirmed, with costs.