By the Court.—Horace Russell, J.
There can be no doubt that there was a warranty of title on the sale. The sale of personal chattels by a vendor in possession, carries an implied warranty of title, unless the facts and circumstances of the sale indicate that the vendor did not intend to assert and sell the absolute title, but only an interest in the property (Burt v. Dewey, 40 N. Y. 283; McGiffin v. Baird, 62 Id. 329; Shattuck v. Green, 104 Mass. 42). In this case there was also an express warranty of title by the auctioneer at the sale.
The only question, then, which demands our consideration, is whether there was a breach of this warranty of title, and that depends upon the answer to the two following questions:
1. Whether the defendant’s title to the property in dispute, passed to Cassidy, or his assignee Carroll i And
2. Whether, if it did, Cassidy’s and Carroll’s failure .to pay the purchase-price of the property and remove the same, gave the defendant authority to resell, so that he could give good title ?
The answer to the first of these questions, is, of course, to be determined by the intent of' the parties. There was no conflict of testimony, and it is for the court to look at the agreement between Cassidy and the defendant, the circumstances and surroundings, and then, applying the well-settled principles of law, to say what must be considered to have been the intent of the parties. . Was it that the title then and there passed to Cassidy, or did it remain in the defendant ?
*71 The property consisted of iron stills set in brick. They were very cumbrous, and could not be removed without first tearing down the brick-work by which they were sustained, and then breaking them up by ponderous machinery.
The sale was at auction, the defendant being not a merchant, bat an official, disposing of the property of his bankrupt assignor, for the benefit of the trust estate. The terms of sale were “Cash on delivery anda deposit required, the iron to be weighed at the expense of the purchaser by a weigher to be appointed by the assignee. All the articles to be taken down by the purchaser at his own expense.” A mere statement of the facts shows that this was intended to be a cash sale. By a “ cash sale” is understood one in which delivery and payment are concurrent and in which the title to the property does not pass until the price is paid (Russell v. Minor, 22 Wend. 659 ; Kelley v. Upton, 5 Duer, 336; Decker v. Furniss, 14 N. Y. 611; Parker v. Parmele, 20 Johns. 130; Hammett v. Linneman, 48 N. Y. 399 ; Osborn v. Gantz, 60 Id. 540).
. It seems now to be pretty well settled that where a sale is for cash, not only does the title to the property not pass while the possession of the property remains in the vendor, but even if possession has been transferred to the vendee, the title still remains in the vendor.
In Hirschorn v. Canney (98 Mass. 149), the plaintiffs, who were tobacconists in Hew York, sold to one Eaton, a tobacconist in Boston, a quantity of cigars on condition that Eaton should send his notes in payment therefor. The plaintiffs shipped the goods to Boston, and mailed to Eaton a bill of lading of them, at the same time requesting him to send his notes in payment. He never did so. Eaton sold the goods to Canney. The plaintiffs replevied from Canney, and their action was sustained, on the ground that, inasmuch as the pay *72 ment by note and the delivery of the property were to be simultaneous, and the notes were not forwarded in compliance with that agreement, no title to the property ever passed.
In Hammett v. Linneman (48 N. Y. 399), it was held that, although a delivery without requiring payment is presumptive evidence of a waiver of the condition that the payment should be made upon delivery to vest the title in the vendee, yet whether or not such delivery is absolute or conditional, so as to pass the title, depends upon the intent of the parties, which may be inferred from their acts or the circumstances of the case. In that case, Hammett sold Linneman a quantity of coal, for cash on delivery. The coal was delivered and carted to Linneman’s yard and mixed by him with other coal. Three days after the delivery, the plaintiff called for payment. Hot obtaining it, he called again in two or three days, and was then informed that Linneman had sold out. The sheriff seized the coal under process against Linneman. The jury found from the circumstances that the payment of the price was a condition precedent to the passage of the title, not waived by delivery of possession, and their verdict was sustained (see also Cole v. Mann, 62 N. Y. 1; Osborn v. Gantz, supra).
If nothing is said in the contract about the mode of payment, a sale will be regarded as having been made for cash, and the payment and delivery will be deemed to be concurrent and interdependent acts (Martineau v. Kitching, L. R. 7 Q. B. 436; S. C., 2 Eng. R. 539). And where it is not the intention of the vendor to part with the possession of the property until he has been paid the price agreed upon in money, he will not lose title to the property by inadvertently allowing the purchaser to get possession thereof without payment (Miller v. Jones, 66 Barb. 148).
In the case at bar, there was no delivery of posses *73 sion. It remained in the vendor. The deposit required by the terms of sale was not made. The price bid by Cassidy was never fully paid nor tendered, either by him or by his assignee. No equities of any third parties have intervened. We may stop far short of the point to which the rule has been carried in the cases above cited. It is clear that it was not the intent of the parties that the title to this property, sold at auction, should pass to Cassidy, except upon payment of the price. The contrary intent is shown beyond question, by the terms of sale, by the retention of the property by the vendor, and by the vendor’s claim of right to again sell the property, upon Cassidy’s non-compliance with his agreement.
It was urged on the argument of this case, by the defendant’s counsel, that the title to the property did not pass to Cassidy, because, by the terms of sale, it remained to take down the stills from their brick foundations, break them up and weigh them. And in support of that theory was quoted the rule that ‘ ‘ where any thing remains to be done to thegoods for the purpose of ascertaining the price, as by weighing, measuring or testing the goods, where the price is to depend on the quantity or quality of the goods, the performance of these things shall also be a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in the state in which they ought to be accepted” (Benjamin on Sales, § 319 and note by American editor, Judge Perkins).
This case would seem to come within the rule, unless we should say that nothing more remained to be done' by the vendor, and the things to be done by the vendee were only for the purpose of determining the total amount, where the whole property had been sold by the ton, and so was analogous to Kimberly v. Patchen, 19 N. Y. 330; Burrows v. Whitaker, 71 N. Y. 291; *74 Groat v. Gile, 51 N. Y. 431; Tyler v. Strang, 21 Barb. 198 ; Coe v. Curtis, 31 How. Pr. 410.
This is certainly a border case. It is not without doubt on this point alone. The things remaining to be done by the parties before there was a transfer of possession, have much to do in determining whether there was an intention to transfer title before possession, in view of the facts that delivery' and payment were to be concurrent. Inasmuch as the decisions on the subject of conditions precedent in England and in this country, and even in this State, are inharmonious, I prefer to consider this branch of the subject, not independently, but in connection with the one I have been discussing, and which I regard as conclusive.
Cassidy could convey to Carroll no better right than he himself had (Ballard v. Burgett, 40 N. Y. 314), and before Carroll could claim that the title to the property passed to him, it was his duty to pay not only the $940, but to pay or tender the balance of the purchase-money which Cassidy agreed, to pay,—over $600. Until that was done, the contract remained executory.
The defendant in this action cannot be said to have waived any rights, so far as the question here considered is concerned, by receiving $940 from Carroll on accóunt of Cassidy’s purchase. He waived nothing, and, least of all, the right to retain the property until the full purehase-pricé was paid. Until that time, as I have indicated, the title to the property remained in him, full payment being the condition of transfer of title. If the title to the property remained in the defendant, and his agreement with Cassidy or his assignee was only an executory contract of. sale, then the defendant, by the sale which occurred on May 15, gave good title to the plaintiff in this action, and Cassidy, or Carroll, has only an action for breach of a contract to sell (Burt v. Butcher, 34 N. Y. 493; Tyler v. Strang, 21 Barb. 198).
*75 If we should assume that the title of the property passed at once to Cassidy- upon the auction sale in November, or to Carroll, upon the assignment by Cassidy to him, and his payment of $940 to the defendant —the defendant still holding possession of the property—I am of opinion that the defendant, upon giving notice to remove (which implied, of course, a notice to pay the balance due), had a right to re-sell.
“If the buyer unreasonably refuses to accept of the article sold, the seller is not obliged to let it perish on his hands and run the risk of the solvency of the buyer. The usage, on the neglect or refusal of the buyer to come in a reasonable time after notice and pay for and take the goods, is for the vendor to sell the same at auction and to hold the buyer responsible for the deficiency in the amount of sales” (2 Kent Comm. 504). It is common to insert a provision for re-sale in the terms of sale, but I think it may be stated as the settled rule of law in the United States, though not perhaps in England, that where the price remains unpaid, the right to re-sell exists, even in the absence of any express stipulation, and that the purchaser is responsible for any loss that may occur, although he did not consent to the re-sale (Sands v. Taylor, 5 Johns. 395 ; Dustan v. McAndrew, 44 N. Y. 12; Crooks v. Moore, 1 Sandf. 297; Lamkin v. Crawford, 8 Ala. 153 ; Bell v. Offutt, 10 Bush. 632; Saladin v. Mitchell, 45 Ill. 80; Redmond v. Smack, 28 Ind. 365 ; Barr v. Logan, 5 Harr. [Del.] 52; Hughes v. United States, 4; Ct. of Cl. 64 ; Gordon v. Norris, 49 N. H. 378; Rosenbaums v. Weeden, 18 Gratt. [ Va.] 785).
It would seem that the re-sale need not be made at auction or in any other particular manner, the only requirement being that it should be made in good faith, in such a manner as would be best calculated to produce the value of the property sold. And while it. is the duty of the vendor to notify the vendee of his *76 general intention to re-sell, it has been held that he is not bound to give notice of the day and place of sale, even though it be at auction (Rosenbaums v. Weeden, supra; Gaskell v. Morris, 7 Watts & S. 32; Pollen v. Leroy, 30 N. Y. 549; Messmore v. N. Y. Shot and Lead Co., 40 N. Y. 422).
The object of the notice of the intention of the vendor to re-sell where the vendee is in default, is to hold the vendee for a deficiency. What is reasonable notice to the vendee, depends upon the circumstances of each particular case.
In Bogart v. O’Regan (1 E. D. Smith, 590), a resale made three or four days after notification, was held to be in reasonable time.
In the case at bar, Cassidy was notified to remove the property on May 5. That notice seems to have been communicated to his assignee, Carroll. A re-sale was advertised, which occurred on May 15. Carroll had actual notice of that, for he was present. Whether or not the proceedings for a re-sale were irregular so that Carroll could recover the amount of money paid by him to the defendant, it is not necessary to express an opinion. We are only concerned with the question whether, on that re-sale, the defendant gave good title to the purchaser—the present plaintiff. I think he did, and that for that reason there was no breach of his warranty of title.
The defendant’s exceptions should be sustained, and a new trial should be ordered, with costs to abide the event.
Speie, J., concurred.